SPARTAN DRILLING COMPANY *v.* BULL.

4-9892                                    252 S. W. 2d 408

Opinion delivered November 10, 1952.

*Jabe Hoggard* and *Crumpler & O'Connor,* for appellant.

*Stein & Stein,* for appellee.

MINOR W. MILLWEE, Justice. Appellees are thirteen homeowners residing along U. S. Highway 82 a few miles southeast of El Dorado, Arkansas, in the vicinity of White and Caney creeks. Appellants, Spartan Drilling Company and C. A. Lee, own and operate several oil wells in the vicinity which also produce large quantities of salt water. This suit was brought by appellees to restrain appellants from polluting the creeks by allowing salt water to escape into White Creek which flows into Caney Creek and thereby causing the breeding of

such large quantities of salt water mosquitoes as to render it impossible for appellees to enjoy their properties.

In their demurrer and answer appellants alleged that the Arkansas Oil and Gas Commission had jurisdiction of the subject matter of the suit and that chancery court was without jurisdiction since appellees had failed to exhaust their administrative remedies. Appellants also asserted they had constructed a complete and adequate salt water disposal system and denied that they were allowing any salt water to escape into the streams. They further alleged that there were low and marshy spots in the area in which mosquitoes might breed and that other producers also allowed salt water to flow into one of the streams.

The demurrer was overruled and upon trial of the issues the chancellor found that, by their operations, appellants were polluting the creeks and should be permanently enjoined from permitting the salt water to escape from their wells and disposal pits into White Creek. Appellees' prayer for a mandatory injunction requiring appellants to clean up the polluted area was denied.

The chancellor correctly overruled the demurrer to the complaint. The Oil and Gas Commission is granted broad supervisory powers relating to oil and gas production under Act 105 of 1939 (Ark. Stats., §§ 53-101 et seq.). Under § 11 of the Act (Ark. Stats., § 53-111), the Commission is authorized to make reasonable rules, regulations and orders to prevent the pollution of fresh water supplies by salt water. The demurrer of appellants does not allege, nor is there anything in the record to indicate, that the Commission ever adopted any rules or regulations governing the disposal of salt water in connection with the operations involved here. In other words, there is no showing that appellees have been afforded an administrative remedy under the Act relied upon. Even if the Commission had exercised the authority given it under the Act, there is nothing in the statute indicating an intention by the Legislature to declare that

such jurisdiction should be exclusive or to deprive courts of equity of their inherent power to abate or enjoin a nuisance. It is not infrequent that a dual remedy, one in the judicial and another in the administrative forum, may be available to the same party for the enforcement of the same right. 42 Am. Jur., Public Administrative Law, § 252. We hold that the jurisdiction granted the Oil and Gas Commission in its supervisory capacity over oil and gas production is not exclusive, and that appellees had the right to maintain the instant suit.

It is also argued that the proof is insufficient to sustain the chancellor's finding that appellants were polluting White Creek. The testimony reveals that in conducting their operations appellants produced salt water which was at first allowed to flow into White Creek nearby. Early in 1951 earthen pits were dug on two of the leases which proved inadequate to handle an increased production of salt water. Appellants then leased five acres around a dry hole which was used as a salt water disposal well. This arrangement also proved inadequate in the summer of 1951 when the pits were deepened and another pump and disposal well were installed. This installation was completed in October, 1951. While witnesses for appellants testified that the disposal system was adequate to handle present and estimated future production of salt water in the field, there was no denial of the evidence introduced by appellees to the effect that approximately 200 gallons of salt water was seeping through the sides of the earthen pits daily and escaping into White Creek. There was proof that White Creek was ordinarily a dry branch in the summer months until appellants began their operations. Since that time White and Caney creeks have become impregnated with salt water which stands in stagnant pools resulting in the breeding of large numbers of salt water mosquitoes.

Appellees described the mosquitoes as large and vicious biting and stated that they were so numerous in the spring and summer months as to make it impossible

for them to enjoy their properties. The mosquitoes swarm on appellees and their children when they walk into their yards and ordinary clothing affords no protection against their painful bites. Appellees' livestock are also molested by the mosquitoes.

Although there was some dispute in the testimony, we think a preponderance of the evidence supports the chancellor's finding that appellants were polluting White Creek and that the breeding of large numbers of salt water mosquitoes resulting therefrom constituted a nuisance and was so detrimental and discomforting to appellees as to render it impossible for them to enjoy their properties.

Appellants contend that since they have expended more than $57,000 in the construction of their present water disposal system, they should not be required to make additional expenditures in order to eliminate a seepage of approximately 200 gallons of salt water per day. We do not understand appellants to contend that this seepage cannot be stopped or that the cost of doing so would be excessive or prohibitive. Spartan's superintendent frankly stated that appellants had not done everything they intended to do to curb the salt water.

Many of our earlier cases involve the question of a nuisance in the maintenance of a livery stable. In *Durfey* v. *Thalheimer*, 85 Ark. 544, 109 S. W. 519, the court said: "It is the duty of every one to so use his property as not to injure that of another; and it matters not how well constructed or conducted a livery stable may be, it is nevertheless a nuisance if it is so built or used as to destroy the comfort of persons owning and occupying adjoining premises, creating an annoyance which renders life uncomfortable; and it may be abated as a nuisance." Another statement from that case which has been approved in many subsequent cases is: "The law takes care that a lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or overrefined person. But, on the other hand,

it does not allow any one, whatever his circumstances or conditions may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity."

In *Yaffee* v. *Fort Smith*, 178 Ark. 406, 10 S. W. 2d 886, 61 A. L. R. 1138, this court held that it constituted a nuisance for the owner of a junk yard to allow water to accumulate in cans and other receptacles so as to cause the breeding of mosquitoes to the annoyance and injury of the health and comfort of persons in that vicinity. In that case the owner was required to either construct a roof over the junk piles so that water would not accumulate in the containers or move the yard to some other location, regardless of the cost of either procedure.

In *Meriwether Sand & Gravel Co.* v. *State, ex rel. Attorney General*, 181 Ark. 216, 26 S. W. 2d 57, the appellant was enjoined from polluting a creek so as to destroy fish and otherwise render the stream unfit for the use and pleasure of the riparian owners. We held that appellants' contention that the granting of the injunction would result in the destruction of its business was not justified even though additional expense would be incurred in order to prevent further pollution. We think the same situation exists in the instant case and that the applicability of the familiar rule that every man must so use his property as not to injure that of his neighbor is unaltered by the fact that additional expense may be incurred to prevent further pollution of White Creek by the appellants.

On the whole case we think the evidence was sufficient to support the chancellor's conclusion that the continued discomfort suffered by appellees on account of the salt water pollution caused by appellants was positive and substantial rather than trivial or imaginary and constituted a nuisance which was subject to abatement. The decree is accordingly affirmed.