**PAN AMERICAN PETROLEUM CORPORATION, Appellant,**

v.

**RAILROAD COMMISSION of Texas et al., Appellees.**

**No. 10602.**

Court of Civil Appeals of Texas.

Austin.

Oct. 29, 1958.

Rehearing Denied Nov. 19, 1958.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Dean J. Capp, Houston, A. W. Bounds, Houston, L. A. Thompson, Tulsa, Okl., of counsel, for appellant.

Will Wilson, Atty. Gen., James N. Ludlum, First Asst. Atty. Gen., Houghton Brownlee, Jr., Asst. Atty. Gen., Black & Stayton, Austin, for appellees.

GRAY, Justice.

This is a Rule 37 case and is an appeal from a judgment sustaining a permit to drill a well in the La Blanca Gas Field in Hidalgo County.

On October 19, 1956, Coastal States Gas Producing Company acquired, from Donna Irrigation District, Hidalgo County No. 1, an oil and gas lease on a strip of land approximately 3 miles long and 150 feet wide and located in the La Blanca Field. The lease describes the land as follows:

"Beginning at the Northwest corner of Lot 139 of the 'B' LaBlanca Subdivision as recorded in the Map Records of Hidalgo County, Texas, for the starting point of this survey;

"Thence North 8° 49' East 3684.1 feet;
"Thence North 0° 24' West 893.0 feet;
"Thence North 26° 26' East 2900.0 feet;
"Thence North 0° 24' West 10044.1 feet to a point in the South Boundary line of Lots 225 and 226 of said 'B' LaBlanca Subdivision;
"Thence, with said Boundary line, South 89° 36' West 150 feet;
"Thence South 0° 24' East 10044.1 feet;
"Thence 26° 26' West 2900.0 feet;
"Thence South 0° 24' East 893.0 feet;
"Thence South 8° 49' West 3357.9 feet to a point in the west line of said 'B' LaBlanca Subdivision, said line

being also the east line of the Hill-Halbert Subdivision;

"Thence, with said line South 0° 24′ East 322.4 feet to the Northeast corner of Lot 38 of said Hill-Halbert Subdivision;

"Thence North 89° 36′ East 100 feet to the place of beginning, and containing 60.15 acres of land."

Subsequent to acquiring the above lease Coastal applied to the Railroad Commission for a permit to drill a well on the lease and the permit was granted as an exception to the spacing rules applicable to the field. The order of the Commission recited:

"That the application of Coastal States Gas Producing Co. for exception under provisions of Rule 37 and permit to drill well No. 1, Donna Water Irrigation District Hidalgo County No. 1 lease, containing 60.15 acres of land, Blocks 139 to 225, Incl., LaBlanca 'B' Subdivision, LaBlanca Field, Hidalgo County, Texas, as per plat submitted is hereby approved and applicant is granted permission to drill well No. 1 spaced as follows:

"50 feet from north lease line; 75 feet from east and west lease lines; * * *."

Pan American Petroleum Corporation appeared at the hearing before the Commission, appealed from its order granting the permit, is appellant here and presents two points as follows:

"First Point: The error of the Court in not holding that; 'Coastal does not have a title or a good-faith leasehold title to the area of its well location, nor does it have a title or good-faith leasehold title to the area of the ground location of its lease.'

"Second Point: The error of the Court in not holding that; 'Coastal's well location is not within the metes and bounds description of its lease.'"

We do not understand Pan American to say that the showing made before the Com-mission does not justify the granting of a permit to drill a well on the land where it is located by the permit. By the above points and the argument thereunder it does not say that the tract of land on which the permit locates the well is not entitled to a well under the conservation laws but says that from the showing made before the Commission it did not reasonably appear that Coastal has a good faith claim to the property and that the well location is not within the metes and bounds description of Coastal's lease.

Pan American concedes the correctness of, and quotes, the statement by this Court in Pan American Production Co. v. Hollandsworth, 294 S.W.2d 205, 211, Er. ref., n. r. e.:

"that neither the Commission, the court below, nor this Court had or has authority to determine substantive questions relating to title or possession or other rights affecting the property involved."

It says however that:

"There is another rule of law which has been announced by the Supreme Court in the case of Magnolia Petroleum Co. v. [Railroad] Commission, 1943, 141 Tex. 96, 170 S.W.2d 189 [191] as follows:

"'Of course, the Railroad Commission should not do the useless thing of granting a permit to one who does not claim the property in good faith. The Commission should deny the permit if it does not reasonably appear to it that the applicant has a good-faith claim in the property.'"

We now quote somewhat at length from the Magnolia case, supra:

"The function of the Railroad Commission in this connection is to administer the conservation laws. When it grants a permit to drill a well it does not undertake to adjudicate questions of title or rights of possession. These

questions must be settled in the courts. When the permit is granted, the permittee may still have no such title as will authorize him to drill on the land. * * * if he has possession, or can obtain possession peaceably, his adversary may resort to the courts for a determination of the title dispute, and therein ask for an injunction or for a receivership. In short, the order granting the permit is purely a negative pronouncement. It grants no affirmative rights to the permittee to occupy the property, and therefore would not cloud his adversary's title. It merely removes the conservation laws and regulations as a bar to drilling the well, and leaves the permittee to his rights at common law. Where there is a dispute as to those rights, it must be settled in court. The permit may thus be perfectly valid, so far as the conservation laws are concerned, and yet the permittee's right to drill under it may depend upon his establishing title in a suit at law. In such a suit the fact that a permit to drill had been granted would not be admissible in support of permittee's title.

"* * * If the applicant makes a reasonably satisfactory showing of a good-faith claim of ownership in the property, the mere fact that another in good faith disputes his title is not alone sufficient to defeat his right to the permit; neither is it ground for suspending the permit or abating the statutory appeal pending settlement of the title controversy."

And see also Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424, 437.

Pan American's challenge to Coastal's showing of a good faith claim to the property where the well is located rests in its contention that Coastal has only an easement to the area. This contention rests on the fact that the source of Coastal's title is a conveyance of the area by La Blanca Agricultural Company to A. F. Hester, Trustee, dated October 12, 1904. Pan American says that in the granting clause of this deed "a clear distinction is made between land which is being conveyed in fee simple and the creation of a mere easement." It cites and discusses authorities in support of this conclusion.

The recitals of the above deed in part are: "* * * has granted, sold and conveyed and by these presents does grant, sell and convey unto * * * Trustee * * * all those certain tracts or parcels of land * * * with the improvements thereon, and more particularly described as follows: Ten (10) acres of land * * *." (This tract is not here involved.)

"Also the canal, laterals and flumes, and rights-of-way therefor now existing on the following lands, and also any further rights-of-way that may be required for the purpose of building, extending and maintaining canals, laterals and flumes for the purpose of irrigation, on, across, along and around the following described tracts or parcels of land to wit: * * *"

Then follows a description, by reference to deeds, of various tracts of land not here involved and finally:

"And also along and over the following described tracts or parcels of land which were conveyed to 'La Blanco Agricultural Company' by the following named persons to wit:—"

Then follows description of tracts of land including the land in question here.

It appears that in 1924 a canal had been cut across the area in question here and also that the area had been subdivided into lots which subdivision is identified as La Blanca B Subdivision. A surveyor called to testify by Pan American testified, on cross examination, that he found evidence on the ground of an old and abandoned canal which extended from the

southwest corner of Lot 223 to its northwest corner. Coastal's well location is within the confines of this abandoned canal.

It is the contention of Pan American that Coastal has only an easement to the "canal" area by reason of the conveyance to A. F. Hester, Trustee, supra. We may concede that the rights of Coastal are fixed by that deed and are not to be extended by construction. It however is the duty of a court of competent jurisdiction to determine if the deed is ambiguous and if not to determine from the terms and provisions of the deed itself the intent of the parties. Jones v. Sun Oil Co., Tex. Civ.App., 110 S.W.2d 80, Er. ref. Then the Commission could not determine the question urged by Pan American. Authorities supra.

Coastal's claim of title is evidenced by its lease above referred to for which it paid value and secured, at least, a memoranda opinion of attorneys as to title.

The objection urged by Pan American to Coastal's title presented a matter that was not within the jurisdiction of the Commission to determine. It could not have been determined by the trial court in this proceeding and it cannot be determined here. Trapp v. Shell Oil Co. supra. Point One is overruled.

Pan American contends that the well is located on Lot 223 of the above mentioned La Blanca Subdivision and that Coastal's lease covers Lot 224 but not Lot 223.

Lot 224 adjoins and lies between Lots 225 and 213 and appears to have common boundaries with those lots. It is opposite to (apparently west of) Lot 223.

Coastal attached to its application for a permit a plat of its Donna Irrigation District lease.

This plat shows, by number, various lots which presumably are the lots in the above mentioned subdivision, however the lease does not describe its area by reference to such lots. (Description supra.) On the plat there is shown a narrow strip which bears the printed words "Donna Irrigation District 60.15 Ac." This strip lies along or between various numbered lots including Lots 223 and 224, but does not indicate the boundaries of those lots nor whether they are within or without the strip. The well location is shown to be in this strip. Clearly if the well is located on land not included within Coastal's lease then boundaries must be determined. In Humble Oil & Refining Co. v. MacDonald, 279 S.W.2d 914, this Court said that the Commission has no authority to adjudicate boundary lines. This holding is consistent with the holdings in the Magnolia and Trapp cases, supra. In the Trapp case the Court said [145 Tex. 323, 198 S.W.2d 437]:

"The duties of the Railroad Commission as given by law do not encompass the power or authority of deciding the ownership of the title to land. We think it follows that the appeal contemplated by Section 8 of Article 6049c does not include such power, even though the appeal is to a district court of Travis County which, in a proper case, has such jurisdiction."

Point Two is overruled and the judgment of the trial court is affirmed.

Affirmed.

HUGHES, J., not sitting.