**Christian R. HOLMES et al., Appellants,**

v.

**DELHI–TAYLOR OIL CORPORATION et al., Appellees.**

No. 13592.

Court of Civil Appeals of Texas.

San Antonio.

June 15, 1960.

Rehearing Denied Aug. 1, 1960.

Longoria, Evins & Snedeker, Edinburg, Cox, Patterson, Freeland & Horger, McAllen, Jack Ware, William Darden, Corpus Christi, William E. York, Charles B. Swanner, McAllen, Hart & Hart, Austin, for appellants.

Charles E. Thompson, McAllen, Turner, White, Atwood, McLane & Francis, C. Sidney McClain, A. W. Walker, Jr., Dallas, for appellees.

MURRAY, Chief Justice.

This suit was instituted by Delhi-Taylor Corporation and Mayfair Minerals, Inc., against Christian R. Holmes and William L. Dugger, Jr., doing business as Dugger & Holmes, John W. Voss Drilling Company, Inc., and the City of Pharr, a municipal corporation of Hidalgo County, Texas, seeking a temporary injunction, and on final hearing a permanent injunction, restraining the defendants among other things, from sand-fracturing the sub-strata of a gas well within the corporate limits of the City of Pharr, which was directionally drilled from an adjoining lot and bottomed in the middle of the adjacent street. The street was thirty feet wide. As a process of completing this well, the defendants were preparing to "sand-fracture" and plaintiffs were seeking by temporary and permanent injunction to prevent this from being done, on the theory that the process would crack and fracture the formation at the bottom of the well, and that these fractures or fissures would extend across property lines and into property on which the plaintiffs held an oil and gas lease.

The defendants, by plea in abatement, asserted the lack of primary jurisdiction in the district court to hear this matter, upon the ground that the primary jurisdiction over such a matter, by statute, is given to the Railroad Commission of this State. This plea in abatement was overrruled by the trial court, and a temporary injunction granted, prohibiting the defendants "from using acid under pressure sufficient to force it into the formation beyond the limits of Defendants' lease; from the use of sand and other fracturing material under pressure which would force such material out beyond the limits of Defendants' lease; from using any and all techniques and/or materials which would physically invade the subsurface of Plaintiffs' premises surrounding the well in question, and from creating channels, cracks or fissures in the subsurface of Plaintiffs' land."

The experts who testified at the hearing differed as to how much pressure and how much material would be required to create fractures and fissures in the sub-strata that would extend into plaintiffs' lease, and thus it is seen that the provisions of the tem-

porary injunction were rather indefinite. Defendants have prosecuted an appeal to this Court from the order granting the temporary injunction.

■ The controversy here presented is one over which the Railroad Commission of this State has primary jurisdiction. Title 102, Articles 6004 to 6066b, inclusive, Vernon's Ann.Civ.Stats. The effect of these statutes is to give to the Railroad Commission of this State primary jurisdiction over the methods of drilling, completing and operating oil and gas wells, and this primary jurisdiction must be exhausted before resort can be had to the courts. Railroad Commission of Texas v. Gulf Production Co., 134 Tex. 122, 132 S.W.2d 254; Peterson v. Grayce Oil Company, Tex. Civ.App., 37 S.W.2d 367, affirmed Grayce Oil Company v. Peterson, 128 Tex. 550, 98 S.W.2d 781; Humble Oil & Refining Co. v. L. & G. Oil Company, Tex.Civ.App., 259 S.W.2d 933; Kavanaugh v. Underwriters Life Insurance Company, Tex.Civ. App., 231 S.W.2d 753; Texas & New Orleans Railroad Co. v. Houston Belt & Terminal Ry. Co., Tex.Civ.App., 227 S.W.2d 610; Corzelius v. Railroad Commission, Tex.Civ.App., 182 S.W.2d 412; Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576.

The provisions of Article 6023, supra, among other things give to the Railroad Commission primary jurisdiction over all persons engaged in drilling, operating or producing natural gas, as well as over all oil or gas wells in Texas. The Article provides as follows:

"Power and authority are hereby conferred upon the Railroad Commission of Texas, over * * * all oil and gas wells in Texas, and over all persons, associations or corporations owning or operating pipe lines in Texas, and over all persons, associations and corporations owning or engaged in drilling or operating oil or gas wells in Texas; and all such persons, associations and corporations and their pipe lines, oil and gas wells are subject to the jurisdiction conferred by law upon the Commission, and the Commission is authorized and empowered to make all necessary rules and regulations for the government and regulation of such persons, associations and corporations and their operations, and the Attorney General shall enforce the provisions of this title by injunction or other adequate remedy and as otherwise provided by law. * * *"

Article 6024, supra, provides as follows:

"In all matters pertaining to the discharge of its duties and the enforcement of its powers and authority as provided by the terms of this title, the Commission shall institute suits, hear and determine complaints, require the attendance of witnesses, pay their expenses out of the fund herein created, and sue out such writs and process as may be necessary for the enforcement of its orders, and punish for contempt or disobedience of its orders as the district court may do."

There are so many provisions of Title 102, placing the duties upon the Railroad Commission with reference to the drilling, completing and producing of gas wells that it would not be proper to set them all out here. Some of the provisions of Article 6014, supra, are especially important. We quote:

"The production, storage or transportation of crude petroleum oil or of natural gas and such manner, in such amount, or under such conditions as to constitute waste is hereby declared to be unlawful and is prohibited. The term 'waste' among other things shall specifically include: * * *

"(f) Physical waste or loss incident to, or resulting from, so drilling, equipping, locating, spacing or operating well or wells as to reduce or tend to

reduce the total ultimate recovery of crude petroleum oil or natural gas from any pool."

It is apparent from the testimony, that when a well is sand-fractured the cracks and fissures cover an area with a diameter of some 600 feet, and some fissures are likely to extend a great deal farther. Thus, if the court may enjoin appellants from sand-fracturing a well bottomed in a 30-foot street because the fissures caused thereby will cross property lines, then in like manner the court may enjoin a person who holds a lease on a city lot in Pharr from sand-fracturing his wells for a like reason, and the production of gas from that part of the Pharr Field that underlies the City could be enjoined from producing any gas, and thus the total ultimate recovery of natural gas from the entire pool would be reduced. The statute expressly says this is a matter to be administered by the Railroad Commission. Certainly, if such matters are to be handled in a fair and uniform manner, it must be done by the Railroad Commission. If such matters are to be handled by the courts, without the power to make rules and regulations such as can be done by the Railroad Commission, under the findings of a jury in one court a person having a small lot might be permitted to sand-fracture, while under the findings of a jury in another court a person with a much larger lot might be denied the right to sand-fracture. It was to avoid these inequities and to establish uniformity that such matters were turned over to the Railroad Commission, with a right to appeal from the rulings and orders of the Railroad Commission to the courts. There can be no question about the Railroad Commission having primary jurisdiction of the controversy here presented.

■ The primary jurisdiction of the subject matter of this suit having been vested, by statute, exclusively in the Railroad Commission, the district court did not have jurisdiction to issue the temporary injunction. Art. 5, § 8, Texas Constitution,

Vernon's Ann.St., limits the jurisdiction of the district courts to issuing injunctions which are necessary to enforce their jurisdiction. Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc. of Dallas, 156 Tex. 408, 295 S.W.2d 873; Carter v. Tomlinson, 149 Tex. 7, 227 S.W.2d 795; White v. Maverick County Water Control and Improvement Dist. No. 1, Tex. Civ.App., 26 S.W.2d 659, reversed on other grounds Tex.Com.App., 35 S.W.2d 107.

Appellees lay great stress upon the holding in Hastings Oil Co. v. Texas Company, 149 Tex. 416, 234 S.W.2d 389. However, in that case apparently the question of jurisdiction of the Railroad Commission was not raised. Appellees also cite LaCour v. Devers Canal Company, Tex.Civ. App., 319 S.W.2d 951, and Spartan Drilling Company v. Bull, 221 Ark. 168, 252 S.W.2d 408 as sustaining the proposition that administrative relief need not be sought from the Railroad Commission before going to court even as to matters within the jurisdiction of the administrative agency. In the LaCour case the Court held that the matter before it was not a matter within the jurisdiction of the Board of Water Engineers. And as to the Arkansas case, the statutes of that State are so different from the statutes of this State, that the case cannot be considered as an authority in deciding the question before us. The duties placed upon the Texas Railroad Commission are mandatory.

The court erred in not sustaining the defendants' plea in abatement. Accordingly, the order granting the temporary injunction will be dissolved and the cause, insofar as it relates to the granting of a temporary injunction will be dismissed.

Reversed and Rendered.

POPE, Justice.

I respectfully dissent. The essential error of the majority opinion is that it writes about the method of drilling when the only issue concerns ownership of land. No one

disputes the power of the Railroad Commission to issue drilling permits and to prescribe drilling methods. Peterson v. Grayce Oil Company, Tex.Civ.App., 37 S.W.2d 367, affirmed 128 Tex. 550, 98 S.W.2d 781. The issue in this case is not whether sand fracturing is a proper method. We take it that it is highly proper. The issue is not the waste or the conservation of the natural resources. Cf. Corzelius v. Railroad Commission, Tex.Civ.App., 182 S.W.2d 412. There is no claim of any waste by anyone. The rule of capture is not involved. Throughout appellants' case and their briefs, the claim is that they have a right to "complete" a well. The issue again is not whether they have a right to "complete" a well but whether they have a right to "complete" it on lands they do not own. The true issue is whether appellants, using a proper method, may intentionally invade their neighbor's land. I say that they may not so invade another's realty. Hastings Oil Company v. Texas Company, 149 Tex. 416, 234 S.W.2d 389.

The majority and appellants argue that by using proper methods the Railroad Commission can authorize the use of a drilling permit any place. Methods of drilling and ownership concern two vastly different problems. I do not conceive that it has ever been the law that the Railroad Commission could authorize A to drill a well on B's land just because A proves he will use proper drilling methods. If the Commission issues a permit to drill upon land not owned by the permittee, I do not conceive it to be the law that the landowner must first go to the Railroad Commission instead of to the court house. Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189, 191, says:

"The function of the Railroad Commission in this connection is to administer the conservation laws. When it grants a permit to drill a well it does not undertake to adjudicate questions of title or rights of possession. These questions must be settled in the courts."

Accord, Novak v. Bruner, Tex.Civ.App., 320 S.W.2d 439; Nugent v. Freeman, Tex. Civ.App., 306 S.W.2d 167; Pan American Petroleum Corporation v. Railroad Commission, Tex. Cip.App., 318 S.W.2d 17; Pan American Production Co. v. Hollandsworth, Tex.Civ.App., 294 S.W.2d 205; Whelan v. Placid Oil Co., Tex.Civ.App., 274 S.W.2d 125; Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801.

Appellants were enjoined from "using acid under pressure sufficient to force it into the formation beyond the limits of Defendants' lease; from the use of sand and other fracturing material under pressure which would force such material out beyond the limits of Defendants' lease; from using any and all techniques and/or materials which would physically invade the subsurface of Plaintiffs' premises surrounding the well in question, and from creating channels, cracks or fissures in the subsurface of Plaintiffs' land." In other words, the order simply prohibits operations on lands which appellants admit they do not own.

Appellants' complaint is that the order does not permit them to go "beyond" their lease, and prohibits them from forcing material "beyond" their lease, from "physically invading" appellants' land, from "creating channels, cracks or fissures" in appellees' land. This is not an injunction against the use of an improper method. It is not an injunction against appellants' drilling on their own land. This is an injunction against using a proper method on another's land. Appellants have ceased drilling with a bit, but they are not through drilling. They intend to "complete" the well by lateral crevices artificially induced that will admittedly extend into their neighbor's lands, and to maintain these crevices by material introduced under force. They intend to extend the well bore into and onto another's land. They are still drilling by a different method, and in this case the drilling admittedly has for its sole purpose the enlargement of a

small well bore beneath their strip to a super hole and caverns beneath appellees' land. For all practical purposes, appellants seek to bottom their well directionally or laterally on another's land.

If appellants invaded the surface of appellees' lands in a manner similar to that which they intend to invade the subsurface, there would be a simple matter for the courts to determine. The Railroad Commission has never entertained the power to authorize a non-owner to move on another's land and to trespass upon it, just to drill or complete a well. If all of the undisputed evidence should demonstrate with certainty that proper sand fracturing methods will be used, I can not agree that this would be enough to empower the Commission to decide that a non-owner could commence a well from the surface of lands he does not own. Somehow, this matter is simple and usual when we view it from the top of the ground, and it seems to become very difficult when we talk about the same thing beneath the surface of the ground. The rule is the same, however. Hastings Oil Co. v. Texas Company, Tex. Civ.App., 227 S.W.2d 317, 321; 149 Tex. 416, 234 S.W.2d 389, 398. What the majority opinion will mean is that sub-surface land rights will in the future be determined by the substantial evidence rule. The import of such a decision and its resulting transfer of real property rights in sub-surface lands to administrative decision is disturbing.

The trial court ordered that the status quo not be disturbed. That was the recited purpose of the order. It was proved to the trial court that once the subsurface is "fractured", it can not be "unfractured".

The whole object of the fracturing is to open crevices which will extend laterally outside appellants' boundaries and onto appellees' lands. That is its purpose, and once done it can not be undone. The Supreme Court has spoken on the subject of temporary injunction to maintain status quo. "The only question before the court at a hearing on an application for a temporary injunction is the right of the applicant to the preservation of the status quo of the subject matter of the suit pending a trial on the merits, and the court is not authorized to enter judgment on the merits at such a hearing. James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959; Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549." Houston Belt & Terminal Ry. Co. v. Texas & New Orleans R. Co., 155 Tex. 407, 289 S.W.2d 217, 219. The Court went on to say that the trial court was without authority to convert the hearing into a trial on the merits, and that the rights of the parties on the merits will not be measured and determined by the appellate court on the basis of the evidence introduced at a preliminary hearing.

I conclude, therefore, that this Court is without power to jump the status quo matter and decide that the appellees are probably going to lose their suit sooner or later anyway. When this Court dissolves the injunction, it permits the subject matter of the suit to be destroyed. If this Court should ultimately be wrong, nonetheless the status quo is disrupted. I would, therefore, maintain the temporary injunction in force until the trial court and a jury have had an opportunity to decide the case on its merits.