DELHI-TAYLOR OIL CORPORATION ET AL V.
CHRISTIAN R. HOLMES ET AL

No. A-8040. Decided February 22, 1961
Rehearing overruled April 5, 1961
(344 S. W. 2d Series, 420)

*Charles E. Thompson* and *F. E. Butler,* of McAllen, *Turner, White, Atwood, Meer & Francis* and *C. Sidney McClain,* of Dallas, *Jackson, Walker, Winstead, Cantwell & Miller,* of Dallas, for Petitioner.

*Longoria, Evins & Snedeker,* of Edinburg; *Cox, Patterson, Freeland, & Horger, William E. York* and *Charles B. Swanner,* all of McAllen; *Jack Ware & William Dargen,* of Corpus Christi, and *Hart* and *Hart,* of Austin, for respondent.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This is a comparion case to No. A-7976 and No. A-7977, both styled *Gregg v. Delhi-Taylor Corporation et al.* and both decided this day, 344 S.W. 2d 411 and 419. This case was orally argued and briefed with those cases in this Court.

This suit was brought and tried in Hidalgo County. Holmes et al. owned or claimed the mineral leasehold estate on a tract 30 feet wide which was bounded by lands of Delhi-Taylor et al. Holmes' well had been completed in the Hansen Sand. It was alleged that Holmes was about to employ the sand fracturing technique in such a manner as to cause cracks or veins to extend outside his land with the result that gas from the mineral estates of Delhi-Taylor et al. would be produced by Holmes. Holmes filed a plea to the jurisdiction of the court alleging primary exclusive jurisdiction in the Texas Railroad Commission to first determine the matter. That plea was overruled by the trial court and a temporary injunction was issued after a hearing. The Court of Civil Appeals at San Antonio reversed that judgment, one justice dissenting. 337 S.W. 2d 479. It dissolved the temporary injunction. We here reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Unlike the Gregg cases, testimony was heard in this case. That testimony, however, does not distinguish this case from the Gregg cases. The evidence showed that Holmes proposed to use 20,000 gallons of fluid and 40,000 pounds of sand under great hydraulic pressure to fracture this producing rock or sand. A witness for Delhi-Taylor testified that when the

ruptures occurred in the formation, pressure would be continued in order to carry the fluid and sand mixture into the fracture and to extend it. After the treatment had been completed, sand would remain in the fractures so as to prop them up. He testified that such a fracture was analogous to a pipeline leading to the well bore since it had great capacity to transmit gas and fluid.

When the Holmes well was completed, its potential test showed a calculated open-flow potential of 5,200,000 cubic feet of gas per day without sand fracturing. There was testimony that the productivity of the Holmes well would be increased four fold by this sand fracturing process. There was other testimony that the process would increase gas producing capacity eight fold.

At the time of trial, the well had been given a production allowable by the Railroad Commission of one-fourth of its open flow potential. We are informed that the allowable now provides for the allocation of the allowables among the wells in the field on the basis of ⅓rd per well and ⅔rds on acreage.

There was a dispute in the evidence as to whether the sand fracturing process would cause fractures across lease lines. Holmes produced testimony that the fractures would extend no more than five feet from the well bore. Witnesses for Delhi-Taylor testified that the cracks would extend well over a hundred feet. One witness for Delhi-Taylor testified as to a hypothetical case, for illustrative purposes, and assuming a number of factors including the fact that none of the fluid or sand was absorbed into the formation, that the fracture would be a circular wafer of 550 feet from the well bore.

There was no testimony that the process would damage the producing horizon or would cause waste. Nor was there testimony that it was necessary to prevent waste. While there was testimony that it would greatly increase the capacity of Holmes' well, it was not shown that the process was necessary to increase the total recovery of gas from the reservoir as a whole. There was no testimony that sand fracturing was a negligent or irresponsible operation. As in the Gregg cases, there were no allegations of nuisance. And as in the Gregg cases, it was stipulated that the Texas Railroad Commission had enacted no rules or regulations regarding the sand fracturing processes.

We regard the case as controlled by opinion in the companion case of *Gregg v. Delhi-Taylor Oil Corp. et al.*, No. A-7977 on our docket, ante 26, 344 S.W. 2d 411. Accordingly the judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Associate Justice Hamilton not sitting.