MAGNOLIA PETROLEUM COMPANY V. RAILROAD COMMISSION
OF TEXAS ET AL.

No. 8040. Decided March 31, 1943.
Rehearing overruled April 28, 1943.
(170 S. W., 2d Series, 189.)

*Walace Hawkins,* of Dallas, *Paul A. McDermott,* of Fort Worth, *Dan Moody and J. B. Robertson, Powell, Rauhut & Gideon,* all of Austin, for petitioner.

It was error for the Court of Civil Appeals to reverse and remand this suit in pursuance of its holding that the suit should be abated by the subsequent filing of a title suit in Gregg County. It was also error for that court to hold that the district court was not authorized to cancel the permit and enjoin the drilling of the well, and in holding that the well was necessary as a prevention of waste. City of Corsicana v. Kerr, 75 Texas 207, 12 S. W. 982; Magnolia Pet. Co. v. New Process Co., 129 Texas 617, 104 S. W. (2d) 1106; Atlantic v. Gulf Land Co., 134 Texas 59, 131 S. W. (2d) 73; 41 Tex. Jur., 536.

*Gerald C. Mann,* Attorney General, *James Noel, Tom D. Rowell, Jr., Cecil C. Rotsch, E. R. Simmons,* and *James D. Smullen,* all Assistants Attorney General, for respondents.

In response to the contentions made by petitioner. Collins v. English, 157 S. W. (2d) 155; Altgelt v. Texas Co., 101 S. W. (2d) 1104; Cook Drilling Co. v. Gulf Oil Corp., 139 Texas 80, 161 S. W. (2d) 1035.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is a Rule 37 case. E. A. Landman applied to the Railroad Commission for a permit to drill two oil wells on a narrow strip of 1.26 acres of land in Gregg County as an exception, to the Commission's spacing regulations. The application was opposed by Magnolia Petroleum Company on the ground that Landman had no title because the land was within the boundaries of one of its own leases, and on the alternative ground that the 1.26-acre tract was a voluntary subdivision in derogation of Rule 37. The Commission granted the permit, reciting that it was necessary to prevent confiscation and waste. The Magnolia filed a statutory suit in the district court of Travis County to test the validity of said order. In that suit the Magnolia introduced its chain of title, and also showed that the identical land was involved in a trespass to try title suit between the same parties then pending in the district court of Gregg County. It disclaimed any desire to have the title question settled in the Travis County suit, but alleged merely that there was a bona fide title controversy, and prayed that the permit be cancelled on that ground. The Magnolia also alleged that the 1.26-acre tract constituted a part of a voluntary subdivision of a larger tract made subsequent to the spacing regulations, and, therefore, could form no basis for an exception thereto. Upon a trial without a jury, the district court rendered judgment cancelling the permit and restraining the drilling of the well. The judge filed findings of fact in which he traced the claim of title of each party, and also found that the Magnolia had actual possession of both the surface and the minerals. He concluded as a matter of law that a bona fide controversy as to the title of the leasehold was shown, and that consequently the Commission had no jurisdiction to grant the permit. He further stated that since this conclusion settled the case, he did not pass on the question of voluntary subdivision. Landman and the Railroad Commission appealed to the Court of Civil Appeals. That court reversed the judgment cancelling the permit and abated the suit, suspended

the permit, and remanded the case to the district court with instructions to retain it suspended upon its docket pending determination of the title suit in Gregg County. 163 S. W. (2d) 446.

The effect of a bona fide title dispute on the power of the Railroad Commission to grant a permit as an exception to Rule 37 is a question never before decided by this Court. In order to view the problem in its proper perspective, we must first consider the situation as it was at common law before the conservation statutes were enacted. No permit was then required to drill for oil. If there was a title dispute, the party who had possession, or who could obtain possession peaceably, could drill for oil. If it later developed that he had no title, he had to account of the true owner for the value of the oil removed. Bender v. Brooks, 103 Texas 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Right of Way Oil Co. v. Gladys City Oil & Gas Mfg. Co., 106 Texas 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Gulf Production Co. v. Spear, 125 Texas 530, 84 S. W. (2d) 452. 1 Summers, Oil and Gas (Perm. ed.), 32 et seq.; 31 Tex. Jur. 531. Pending settlement of the controversy in a suit brought for that purpose, either party in a proper case might have an injunction to preserve the status quo. 1 Summers, Oil and Gas (Perm. ed.), 77; 31 Tex. Jur. 534. Or, upon proper showing, in order to prevent waste, a receiver might be appointed to drill the well and hold the proceeds of the oil to await the outcome of the title suit. 1 Summers, Oil and Gas (perm. ed.), 80; Guffey v. Stroud (Tex. Com. App.), 16 S. W. (2d) 527; 64 A. L. R. 730; 31 Tex. Jur. 534.

■■ In our opinion, the situation is not materially changed by the conservation laws. In cases where the Court of Civil Appeals has considered the matter, it seems to have been erroneously assumed that such a permit affirmatively authorizes the permitee to take possession of the land and drill. Consequently, it has been held that unless the applicant has an undisputed title to the leasehold, the Commission has no power to grant him a permit. Tide Water Oil Co. v. Railroad Commission (Tex. Civ. App.), 76 S. W. (2d) 553; Altgelt v. Texas Company (Tex. Civ. App.), 101 S. W. (2d) 1104 (writ dismissed). We do not think the permit has this effect. The function of the Railroad Commission in this connection is to administer the conservation laws. When it grants a permit to drill a well it does not undertake to adjudicate questions of title or rights of possession. These questions must be settled in the courts. When the permit is granted, the permittee may still have no such title as will authorize him to drill on the land. If other parties are in possession of the property, as in the present case, they may defend

their possession by self-help, or by injunction proceedings. Before the permittee can drill, he must first go to court and establish his title. In that suit, upon proper showing, he may have a receiver appointed to drill the well and hold the proceeds to await the final judgment on the title issue. On the other hand, if he has possession, or can obtain possession peaceably, his adversary may resort to the courts for a determination of the title dispute, and therein ask for an injunction or for a receivership. In short, the order granting the permit is purely a negative pronouncement. It grants no affirmative rights to the permittee to occupy the property, and therefore would not cloud his adversary's title. It merely removes the conservation laws and regulations as a bar to drilling the well, and leaves the permittee to his rights at common law. Where there is a dispute as to those rights, it must be settled in court. The permit may thus be perfectly valid, so far as the conservation laws are concerned, and yet the permittee's right to drill under it may depend upon his establishing title in a suit at law. In such a suit the fact that a permit to drill had been granted would not be admissible in support of permittee's title.

■ Of course, the Railroad Commission should not do the useless thing of granting a permit to one who does not claim the property in good faith. The Commission should deny the permit if it does not reasonably appear to it that the applicant has a good-faith claim in the property. If the applicant makes a reasonably satisfactory showing of a good-faith claim of ownership in the property, the mere fact that another in good faith disputes his title is not alone sufficient to defeat his right to the permit; neither is it ground for suspending the permit or abating the statutory appeal pending settlement of the title controversy.

■ The Magnolia contends alternatively that even if Landman's title is good, the judgment of the district court cancelling the permit should be affirmed because it appears as a matter of law from the judge's findings of fact that the 1.26-acre tract is a voluntary subdivision in derogation of Rule 37. We find no merit in this contention. The 1.26-acre tract appears to be a part of a voluntary subdivison of the 9-acre tract. Landman alleged in his pleadings that the owners of the remainder of the 9-acre tract joined with him in his application for the permit. There is no statement of facts, and the findings do not show that the 9-acre tract, from which the 1.26-acre tract was segregated, is entitled to no well or that it has all the wells to which it would be entitled without regard to the subdivision. Neither does it appear whether or not the Commission took into consideration

the needs of the 9-acre tract as a whole in locating the two wells on the 1.26-acre tract. See in this connection Railroad Commission v. Magnolia Pet. Co., 130 Texas 484, 109 S. W. (2d) 967; Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. (2d) 73; Humble Oil & Refining Co. v. Potter (Tex. Civ. App.), 143 S. W. (2d) 135; Railroad Commission v. Miller (Tex. Civ. App.), 165 S. W. (2d) 504. The district judge expressly stated that he did not pass on the question of voluntary subdivision. Consequently, the case must be remanded for a new trial.

The judgments of the district court and of the Court of Civil Appeals are reversed, and the cause is remanded to the district court for a new trial.

Opinion delivered March 31, 1943.

Rehearing overruled April 28, 1943.