## TRAPP et al. v. SHELL OIL CO., Inc., et al.
### No. 9502.

Court of Civil Appeals of Texas. Austin.
June 27, 1945.

Rehearing Denied July 18, 1945.

Pollard, Lawrence & Blackburn, of Tyler, for appellant M. E. Trapp.

Grover Sellers, Atty. Gen., Geo. W. Barcus, Fagan Dickson, and Elton M. Hyder, Jr., Asst. Atty. Gen., for appellant Railroad Commission of Texas.

R. H. Whilden, of Houston, and Dan Moody and J. B. Robertson, both of Austin, for appellee Shell Oil Co., Inc.

Joe S. Brown, of Houston, and Stanley Hornsby, of Austin, for appellee Gulf Oil Corporation.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment setting aside an order granting a permit to drill a second well (to quote from the order) "on the Anderson Crisp 1.77 acre or 3 acre tract in the McAnally and Alexander Surveys, East Texas Oil Field, Gregg County, Texas," as an exception to Rule 37 in order to prevent waste and confiscation; and enjoining production under the permit. The suit was by Shell (Shell Oil Company, Incorporated) and Gulf (Gulf Oil Corporation), adjacent lessees, against Trapp, the permittee, and the Commission (Railroad Commission of Texas) and its members.

This is the second appeal in the case. For opinion on first appeal see Shell Oil Co. v. Trapp, Tex.Civ.App., 169 S.W.2d 1010, error ref. w. m.

The controversy in the main revolves around the issue as to the amount of acreage Trapp was entitled to have considered in determining his right to the permit. Concededly he owned a tract of 1.366 acres. He claimed to own land to the east and north of this tract which would increase his acreage to 1.94 or 2.25 respectively. The trial court held that Trapp's claim beyond the 1.366 a. tract was not of such substantial character as to warrant a good faith assertion of title. The greater portion of the 740-page statement of facts is devoted to this issue. The trial judge has very clearly and accurately summarized the controlling features of this evidence in his findings numbered II to VIII, inclusive (Tr. pp. 40-45), which we approve and adopt. We deem it unnecessary, however, to extend this opinion by incorporating these findings therein, for the reason that the trial court's judgment must be affirmed upon the recent holdings of this court in the Miller (Miller v. Railroad Commission, 185 S.W.2d 223, error ref.) and Thomas (Thomas v. Stanolind, 188 S.W.2d 418) cases. For a like reason we also pretermit a discussion of the constructions urged by the parties, respectively, of the decision in the Landman case (Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189) as applied to the factual situation in the instant case.

The other issues present but two questions: whether there was substantial evidence to support the permit upon the theory of (1) confiscation, or (2) waste.

Upon the issue of confiscation the evidence was without substantial dispute; the controlling factors of which are embodied in the trial judge's findings X and XI, as follows:

"X. The said Crisp tract was on November 20, 1940, drilled to a greater density and had greater allowable production per acre than the surrounding eight times and larger areas as shown on plaintiffs' exhibit 17, and to a much greater density than the average of the East Texas field, than the

average of said field in a segment extending from the said Crisp tract to the west edge of the field, than the average of the land extending from said Crisp tract southward to the south edge of the field and than the average of the land lying between said Crisp tract and the north edge of the field. Well number one on the said tract then had a net advantage in spacing in relation to the boundary lines of said Crisp tract over the wells on other land in the vicinity, that is, there was more land outside of the boundaries of said tract that was closer to Trapp well number one than to any outside well than there was land inside the boundaries of said tract that was closer to an outside well than to said well number one. When the East Texas Oil field was discovered, the said Crisp tract was underlain with about 60,000 barrels of recoverable oil. Since that time and up to November 30, 1940, well number one on said tract had produced a total of about 81,000 barrels of oil. The said well number one will continue to produce oil for 44 years after November 20, 1940, and during that time will produce 220,000 barrels of oil, making a total of about 300,000 barrels or about five times the amount of recoverable oil that was originally thereunder. On November 20, 1940, all of the oil that had been withdrawn from well number one on said Crisp tract had been replaced and said tract then had practically as much oil under it as when the field was first discovered. The water drive in the East Texas field has caused regional migration of oil from west to east and there is no way that the entire field can be produced without such migration. In the absence of uniform spacing of wells on the East side of the field, production of the wells under the proration order as it existed on November 20, 1940, and prior thereto resulted in the densely drilled areas on the east side getting more of this migrating oil per acre than those less densely drilled. Uniform production per acre of this migrating oil under said proration orders could be secured only by uniform spacing of wells all over the said field. If the entire East Texas field had been drilled from the beginning to a uniform density of one well to each ten acres, the ten acre tract centered by the said Crisp tract with one well thereon would have produced during the entire life of the East Texas field a much smaller amount of oil per acre than said Crisp tract will produce per acre with well number one thereon and no other well, and this is true whether the said Crisp tract contains 1.366 acres or 1.94 acres, or 2.25 acres. The Crisp tract with 1.366 acres and only one well will produce far more oil per acre during the entire life of the East Texas field than it would have produced with one well if the entire field had been drilled to a density of one well to each 1.366 acres. If the said Crisp tract had contained 1.94 acres or 2.25 acres it still, with only one well, would produce ultimately a greater amount of oil per acre than it would if the entire field had been drilled from the time well number one was completed thereon to the same density as said Crisp tract.

"XI. There has never at any time since the Trapp well number one was put in production been any net drainage or loss of oil away from the said Crisp tract. On November 20, 1940, there was more oil running from outside land in under the said Crisp tract every day than was running from the said Crisp tract out to outside land. With one well on said Crisp tract, whether it contained 1.366 acres or 1.94 acres, or 2.25 acres, M. E. Trapp will produce far more than the equivalent of the oil originally beneath the said Crisp tract plus all oil that has migrated or will migrate thereto under the laws of nature. There has never been any net drainage of oil from said tract by wells on adjacent leases. It was not necessary on November 20, 1940, to drill a second well on said Crisp tract to prevent confiscation of the property of defendant M. E. Trapp."

We should add in this connection that the statement in these findings that there was no disparity in the density of the Crisp tract as compared with the eight times surrounding area, is manifestly predicated upon the 1.366 acreage basis. There was a disparity in such density if the acreage basis be assumed at either 1.94 or 2.25. But the uncontradicted evidence was that there was no excess or uncompensated local drainage, all oil extracted from all wells in this area being "replaced, not by local drainage, but by the general migration of oil from the west." Miller case [185 S.W. 2d 226], above. Appellees' principal witness on this point was Mr. Gordon Griffin, who also testified in the Thomas case, above. In every essential particular his testimony was not different from that in the Thomas case or from the evidence in the Miller case.

Upon the issue of waste there was no substantial difference in the testimony upon the two trials. As stated in our opinion on the former appeal [169 S.W.2d 1012], "If the facts are the same on the next trial as to waste, then no issue of waste is presented as a matter of law." The evidence conclusively showed that there were no local conditions which would warrant another well on the tract from the viewpoint of waste prevention; and (as found by the trial judge), "one well in the area of said Crisp tract will drain all the recoverable oil from at least 10 acres of land which is true of the East Texas field generally. The drilling and operation of well number two on said Trapp tract will not increase the total ultimate recovery of oil from the East Texas field."

The trial court's judgment is affirmed.

Affirmed.