AMERADA PETROLEUM CORPORATION
et al., Appellants,

v.

RAILROAD COMMISSION of Texas et al.,
Appellees.

No. 11327.

Court of Civil Appeals of Texas.

Austin.

June 30, 1965.

Rehearing Denied Nov. 17, 1965.

John S. Miller, Thomas W. Lynch, Tulsa, Okl., Kenneth C. Minter, Houston, McGinnis, Lochridge, Kilgore, Hunter & Wilson, B. D. St. Clair, Frank Douglass, Austin, for appellant.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, 1st Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., J. Arthur Sandlin, Linward Shivers, Asst. Attys. Gen., Austin, McLemore & McLemore, B. Reagan McLemore, Longview, Clark, Thomas, Harris, Denius & Winters, James H. Keahey, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from a Railroad Commission Rule 37 order permitting L & G Oil Company to plug back and redrill 5 abandoned wells, Nos. 2, 5, 6, 7 and 8, on its T. W. Lee lease, East Texas Field. Following the issuance of the order, appellants filed suit in the 53rd District Court of Travis County, to set aside the order. The trial court granted the defendants' Motion for Summary Judgment and entered judgment upholding the order of the Commission.

The appeal is based on six points to the effect that the trial court erred in granting a summary judgment because as a matter

of law the defendant had abandoned the 5 wells in question; in holding that the Commission had no jurisdiction to consider the contractual rights of the parties; in upholding the validity of the permit; in holding that the granting of a permit to plug back and redrill 5 wells was controlled by the so-called rule of the Harrington case; in holding that the 1948 judgment in Humble v. Lewis did not preclude the Commission from granting a permit to plug back and redrill the 5 wells, and in sustaining defendants' Motion for Summary Judgment upholding the granting of the permit to redrill the 5 wells when unnecessary to prevent waste or confiscation. The Commission entered the following order which is the subject of this appeal:

"17,822 – 37,220

CASE NO.    54,669 – 55,707
RULE 37

| NOTICE |
| --- |
| NO ALLOWABLE WILL BE AS-SIGNED to any well which does not have sufficient surface casing to protect all fresh water sands. Where Commission rules do not specify surface casing requirements, it will be necessary to contact Board of Water Engineers, Austin, Texas, to ascertain the depth to which fresh water sands must be protected. |

Wells Nos. 2, 5, 6, 7 & 8,
T. W. Lee Lease,
73.64 acres
Wm. Robinson Survey, East Texas Field, Gregg County, Texas
APPLICANT:
L & G Oil Company
Box 2067
Longview, Texas

The application of    L & G Oil Company    for an exception under the provisions of Rule 37 coming on to be heard on the 16 day of April , 1964, by the Railroad Commission of Texas, and it appearing that the petition shows good cause; that no injustice will be done by the granting of such exception, and that same should be granted to prevent confiscation and or to prevent physical waste:

NOW, THEREFORE, IT IS ORDERED: That the application of L & G Oil Company for an exception under the provisions of Rule 37 and a permit to redrill and straighten Wells Nos. 2, 5, 6, 7 & 8, T. W. Lee Lease containing 73.64 acres of land in the Wm. Robinson Survey, East Texas Field, Gregg County, Texas as shown by plat submitted is hereby approved and applicant is granted permission to redrill and straighten Wells Nos. 2, 5, 6, 7 & 8 which is to be located as follows:

No. 2—309.7′ from the west line and 300′ southwest of Well No. 8.
No. 5—66′ from the west line and 178′ southwest of Well No. 1.
No. 6—325.3′ from the west line and 330′ south of Well No. 9.
No. 7—1020.6′ from the west line and 695′ southeast of Well No. 6.
No. 8—529.2′ from the west line and 300′ northeast of Well No. 2.

IT IS EXPRESSLY STIPULATED That this order is based on evidence pertaining to this particular well and that should this well ever be plugged and abandoned the Commission will consider such plugging and abandonment as prima facie evidence that production from said well is no longer necessary to prevent confiscation of applicant's property or to prevent waste, and upon such plugging and abandonment, the authority for such well as granted under this permit shall cease.

IT IS FURTHER ORDERED by the Commission that this order shall not be final and become effective until fifteen days after it is actually signed by the

Commission; provided, that if a motion for rehearing of the application be filed by any party at interest within such 15-day period, this order shall not become effective until such motion is overruled, or if such motion is granted this order shall be subject to further action by the Commission.

'It is the order of the Commission that unless drilling operations are commenced in good faith within six months from and after the date of the order issuing such exception to Rule 37, *or unless an application for a six months extension of such permit shall be filed before the expiration of the first six months stating the reasons why drilling has not been begun within the six months period,* such permit shall be cancelled, and no renewal thereof shall be had unless there is filed a new application, notices issued, hearing had and proof made as in the original case. Such application for extension shall be sworn to by the applicant to whom such Rule 37 will have been issued.'

ENTERED at Austin, Texas, on this the  11  day of  June  1964.

ATTEST:

(SEAL)

/s/ O. D. Hyndman
SECRETARY

/s/ Ben Ramsey
CHAIRMAN
/s/ J. C. Langdon
COMMISSIONER

COMMISSIONER"

———◆———

This case originated as a result of the East Texas Oil Field investigation that was conducted in the summer and fall of 1962. The Commission in conducting this investigation ran inclination surveys on certain wells which are involved in this cause. As a result of these surveys the Commission in the summer of 1963 authorized Amerada to make a directional survey pursuant to the Commission's Rule 54. The validity of Rule 54 had been attacked and upheld by the Supreme Court in L & G Oil Company v. Railroad Commission of Texas, 368 S.W. 2d 187.

These inclination and directional surveys indicated that the wells involved in this appeal were not drilled vertically and were deviated to some degree. However, it is the position of the Commission that as far as this appeal is concerned it is immaterial whether the bottom hole location is on or off the lease in question.

The wells in question are located on a 73.-64 acre tract in the East Texas Field, Gregg County, Texas. There are a total of nine wells on the lease and the first well was drilled in July, 1935, and the last one was drilled in June, 1948.

■ The L & G group originally made application to the Commission for approval of the bottom hole locations of wells 2, 5, 6, 7 and 8 and a hearing on these applications was set for September 24, 1963. When the docket was called both the L & G group and Amerada requested a recess. As a result of this recess an agreement was entered into between Amerada and L & G and a copy of that agreement is found at page 59 of the Transcript. The Commission was not a party to this contract agreement, and is not bound by any agreements therein contained.

The reset September 24 hearings were resumed on December 13, 1963, and at such hearing the L & G group withdrew its application for approval of the wells here in question and asked permission to plug and abandon such wells. This permission was later granted and these deviated well bores have been plugged.

Following the Supreme Court decision in Harrington v. Railroad Commission, 375 S.W.2d 892 (January, 1964) L & G filed an

application in March, 1964 to redrill and straighten wells numbered 2, 5, 6, 7 and 8 and being the same wells involved in this controversy.

It is the position of the Commission that as a result of the Harrington case, the Commission had no alternative but to grant L & G the right to redrill and straighten the deviated wells. The Harrington case made it amply clear that it was immaterial whether the deviated wells were drilled and completed on or off a lease.

In the Harrington case the Commission had denied Harrington his request to go in and redrill and straighten 3 wells which the Court in its opinion assumed had been intentionally deviated and completed under adjoining leases. The Commission had taken the position in that case that Harrington had abandoned his permits by misuse. The Court in rejecting the Commission's position said:

"The only question rightfully involved in these cases is whether appellant has a legal right to redrill and straighten the well bores of the three existing wells and whether the Commission shall be enjoined from interfering with his drilling activities in doing so. We hold that appellant has a legal right to redrill and straighten the existing wells and that the Commission's orders denying him permits to do so are unauthorized in law and therefore arbitrary."

From the clear and precise language of the Supreme Court the Commission had no alternative other than to grant appellee L & G the permits in question to redrill and straighten its wells.

Appellants assert that L & G should not have been given the right to redrill and straighten the 5 wells because of a contract entered into between L & G and Amerada.

The Commission is an administrative body and cannot adjudicate contracts.

Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189.

Appellants take the further position that since L & G agreed to plug and abandon the wells the action of the Commission was arbitrary in not considering the agreement, on the other hand the Commission says that there is ample evidence to show that there was no intent to abandon these permits.

Humble Oil & Refining Co. v. Cook, Tex. Civ.App., 215 S.W.2d 383, err. ref., n. r. e.

The agreement referred to herein is dated December 5th, 1963, and sets out in detail the history of and ownership of the land and wells thereon, and in part reads:

"(1) L. & G. OIL COMPANY GROUP will immediately withdraw the applications to have Wells #2, #5, #6, #7 and #8 reinstated and placed back on production in the Rule 37 Case now pending before the Railroad Commission.

(2) L. & G. OIL COMPANY GROUP will, within thirty (30) days after the date of this agreement, abandon said five (5) wells and will request permission of the Railroad Commission to plug said five (5) wells; and when such permits are granted, L. & G. Oil Company Group will plug and abandon said five (5) wells as hereinabove listed.

(3) 'AMERADA' will not oppose the application to plug and abandon said five (5) wells.

(4) L. & G. OIL COMPANY GROUP reserves the right to continue with its applications to reinstate Wells #3, #4 and #9 and have said wells placed back on production by the Railroad Commission, and may follow their legal rights through the Courts."

Appellees contend that L & G did not intend to abandon its permits, even though it did plug and abandon the deviated well

bores, and refers to a portion of appellants' answer to defendants' Motion for Summary Judgment, with the allegation:

"L & G in violation of its written agreement with Amerada failed to file, within thirty days, the Railroad Commission Form 2A, Application to Plug, and Railroad Commission Form 4, Plugging Record * * * L & G has never plugged and abandoned wells 2, 5, 6, 7 and 8 on the T. W. Lee lease, but instead merely plugged back the deviated well bores. * * *"

██ The Commission was not precluded from granting the replacement well permits because of the agreed judgment in Humble v. Lewis dated August 20, 1948, which was a Rule 37 case involving well No. 9 on the L & G–T. W. Lee Lease, and in part reads:

"(b) that when said No. 9 well has been drilled, it and the existing wells on said lease of H. G. Lewis, Jr., doing business as L & G Oil Company, 73.64-acre T. W. Lee fee tract, William Robinson Survey, Gregg County, Texas, more particularly described in instrument above referred to, will constitute full and final development of said tract for oil and gas purposes, and no additional wells are to be applied for or drilled thereon by H. G. Lewis, Jr., doing business as L & G Oil Company, his heirs, successors or assigns."

This is not a Rule 37 case involving confiscation and waste but involves permits to redrill and straighten.

In the Harrington case the Court stated:

"It follows that the applications to straighten and correct the well bores of the existing wells are not 'garden variety Rule 37' cases, and the Commission was not authorized to deny the applications on the ground that they were not necessary to prevent confiscation."

Stewart v. Humble Oil & Refining Company, 377 S.W.2d 830, Sup.Ct.

There is no dispute as to the material facts of this case; the attack by appellants on the order of June 11, 1964 is based on three points of law: (1) violates the settlement of December 1963, (2) violates the agreed judgment of August 20, 1948, and (3) that the five wells are not necessary to prevent waste or confiscation.

We believe that the judgment of the trial court was justified as a matter of law in granting the summary judgment.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice.

I respectfully dissent.

It seems to me to be too simple to hold that the Supreme Court in Harrington has laid to rest all questions pertaining to applications to redrill slanted oil wells regardless of the facts and circumstances relevant to such applications.

The facts and circumstances present here were not, nor were similar facts and circumstances, before the Supreme Court in Harrington and, in my opinion, such case is not controlling here.

It is quite true that the Commission cannot adjudicate titles or fix boundaries to land or make binding construction of contracts. It is equally true that the Commission cannot ignore or close its eyes to these matters. It must appraise them in its administrative capacity in order to perform its statutory duties.

In Cheesman v. Amerada Petroleum Corporation, 227 S.W.2d 829, n. w. h., this Court in passing on the weight of an objection to the issuance of a permit to drill a

well for oil based on a pooling agreement had this to say:

"Amerada, pointing out that lessor Akarda is not a party to this suit, questions our authority to determine the validity of the pooling agreement in its lease.

It must be remembered that the Commission granted the permit which Amerada attacked by filing suit in the court below. The permit carried a prima facie presumption of validity. 31a Tex.Jur., p. 630. The burden was on Amerada to overcome this presumption. It attempted to do so, in part, by fully alleging and relying upon the validity and effect of the pooling agreement.

\* \* \*

We realize that the Commission cannot adjudicate the validity of this agreement any more than it can adjudicate title, but we believe it has the same power to appraise objections made to the issuance of a permit as it has to appraise the title upon which an application for a permit is based. The rule as to title is that the applicant must make a ' \* \* \* reasonably satisfactory showing of a good-faith claim of ownership \* \* \*.' Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189, 191.

■ Applying the principle of this rule to this case we are convinced that a 'reasonably satisfactory showing of a good-faith' objection to the application is not made when the objection is founded upon what we consider to be a void agreement."

It is my opinion that the Commission had a similar duty here with reference to the 1948 judgment and the 1963 agreement referred to in the majority opinion.

That the Commission did not perform this duty is shown by the following quotation from its brief herein:

### "L & G ENTITLED TO PERMITS AS A MATTER OF LAW

It is the position of the Commission that as a result of the Harrington case, the Commission had no alternative but to grant L & G the right to redrill and straighten the deviated wells."

If the Commission had evaluated the evidence, I believe it could have found that these instruments precluded appellees from presenting a reasonably good faith application for redrilling these wells.

In its appearance before the Commission on December 13, 16 and 17, 1963, the attorney for L & G stated to the Commission:

"Pursuant to the settlement reached with Amerada Petroleum corporation, L & G Oil Company hereby abandons its applications as to wells 2, 5, 6, 7 and 8 and requests authority to plug such wells."

At the April 16, 1964, hearing before the Commission on the application of L & G to plug back and redrill these five wells John C. Robbins, Jr. and Dorothy Robbins Sage, appellees herein, appeared through their attorney and protested the application of L & G on the ground that it was in violation of the December 5, 1963, agreement.

I believe the parties are entitled to have the Commission pass on the good faith validity of the application of L & G to redrill these five wells. I would reverse and render this cause setting aside the order granting authority to redrill these five wells but without prejudice to the rehearing of such application by the Commission in accordance with the views here expressed.

No point is made here as to the manner in which this case was tried but in my opinion it is triable under the substantial evidence rule and not under rules applicable to summary judgments.