NO. 07-07-0292-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 31, 2009
______________________________

MIKE BERKLEY, KATHRYN BERKLEY, and THOMAS HARTMAN, 

                                                                                                 Appellants                
v.

RAILROAD COMMISSION OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN05-004200; HON. SCOTT H. JENKINS, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
          Mike and Kathryn Berkley and Thomas Hartman (referred to by name or collectively
as the Land Owners) appeal from the trial court’s judgment affirming an order of the Texas
Railroad Commission (the Commission). That order approved the application of L & R
Tank Trucks for authority to use the G. Lynch No. 1 well in the Sledge Field, Montague
County, Texas, to inject and dispose of up to 3000 barrels of salt water per day between
2,762 and 2,990 feet below the surface. The Berkleys and Hartman own the surface and
mineral rights in lands adjoining the location of the injection well and assert nine issues in
effort to reverse the trial court’s judgment. They involve claims of trespass and the
unconstitutional taking of property, the failure to abide by rules of procedure, and the
existence of sufficient evidence to support the Commission’s ruling. For reasons to be
explained, we affirm the judgment. 
          Standard of Review
          Appellate courts are afforded a limited review of agency orders. This is so because
we accord substantial deference to the agency’s expertise. Railroad Comm’n v. Torch
Operating Co., 912 S.W.2d 790, 792 (Tex. 1995). The circumstances allowing us to
reverse or alter those orders are limited to situations wherein substantial rights have been
affected by the decision due to the order being in violation of constitutional or statutory law
or the decision exceeding the agency’s statutory authority, arising through unlawful
procedure, being affected by other errors of law, lacking the support of substantial
evidence, or being arbitrary or capricious and consequently an abuse of discretion. Tex.
Gov’t Code Ann. §2001.174(2) (Vernon 2008). Furthermore, we do not look to the
correctness of the order but only to its reasonableness. City of El Paso v. Pub. Util.
Comm’n, 883 S.W.2d 179, 185 (Tex. 1994). That is, the standard of review is not whether
the agency reached what we would deem the correct decision but whether the record
contains some reasonable basis for the decision made. Id. So, we do not re-weigh the
evidence, see Tex. Gov’t Code Ann. §2001.174 (Vernon 2008), but rather assess whether
substantial evidence (i.e. more than a scintilla) supported the ruling. Railroad Comm’n v.
Torch Operating Co., 912 S.W.2d at 792. With that said, we turn to the arguments before
us.
          Trespass and Unconstitutional Taking
          As previously alluded to, the Land Owners assert that the Commission’s ruling was
wrong because it violated both the laws of trespass and the constitutional restrictions
against taking property without just compensation. This supposedly was so because the
order was nothing short of state action granting L & R Tank Trucks the authority to trespass
upon and take their subsurface property interests. We disagree.
          That the decision does not authorize a trespass was established in the opinion of
FPL Farming Ltd. v. Texas Natural Resource Conservation Comm’n, No. 03-02-0477-CV,
2003 Tex. App. Lexis 1074 (Tex. App.–Austin, February 6, 2003, pet. denied) (not
designated for publication). In FPL Farming, like here, an applicant was granted a permit
to dispose of water by injecting it into an existing well located near the property of FPL
Farming. And, because the waste water would migrate into the subsurface strata of realty
owned by FPL, the latter also argued that the decision constituted a governmentally
approved trespass and allowed the unconstitutional taking of property. The claims were
rejected because 1) the land owner failed to show that his use and enjoyment of the
property would be impaired, 2) no evidence illustrated that the injected waters would
permanently occupy the subsurface property of the land owner, and 3) securing a permit
did not constitute a public taking, i.e. did not authorize any injury to person or property or
authorize the invasion of another’s property rights. Id. at *11-16; accord Tex. Water Code
Ann. §27.104 (Vernon 2008) (stating that receiving a permit under Chapter 27 of the Water
Code “does not relieve [the recipient] from any civil liability”); 30 Tex. Admin. Code 
§305.122(c) (2009) (stating that the issuance of a permit does not authorize any injury to
persons or property or an invasion of other property rights, or any infringement of state or
local law or regulations). We find this outcome logical and authoritative.
          We take from FPL Farming, the foregoing statutes and regulations, and other
authorities cited below that the permit process has limited effect. Specifically, securing a
permit does not immunize the recipient from the consequences of its actions if those
actions affect the rights of third parties. Nor does it authorize the recipient to act with
impunity viz third parties. Rather, obtaining a permit simply means that the government’s
concerns and interests, at the time, have been addressed; so, it, as a regulatory body, will
not stop the applicant from proceeding under the conditions imposed, if any. Indeed, the
Texas Supreme Court has described the issuance of a permit to drill as a mere “negative
pronouncement” that “grants no affirmative rights to the permittee to occupy the property.” 
Magnolia Petroleum Co. v. Railroad Comm’n, 141 Tex. 96, 170 S.W.2d 189, 191 (1943). 
“It merely removes the conservation laws and regulations as a bar . . . .” Id. Third parties
remain free to protect their rights and property, however. See Coastal Oil & Gas Corp. v.
Garza Energy Trust, 268 S.W.3d 1, 12 (Tex. 2008) (stating that whether subsurface fracing
gives rise to an action for trespass is decided by the courts, not the agency considering an
application); Gray v. Helmerich & Payne, Inc., 834 S.W.2d 579, 582 (Tex. App.–Amarillo
1992, writ denied) (stating that the receipt of a drilling permit does not undertake to
adjudicate property rights). Any dispute regarding the rights of the permittee in relationship
to others is left for the courts, not the Commission, to resolve. Magnolia Petroleum Co. v.
Railroad Comm’n, 170 S.W.2d at 100. 
          The situation is much like getting a driver’s license. While some may think that the
license allows them to drive upon a neighbor’s lawn, it does not. The home owner may still
undertake effort to protect his yard or recover for damages suffered. Nor does the license
allow them to ignore other laws and restrictions whether related to or unrelated to driving.
          In sum, obtaining the permit at bar neither took property from the Land Owners nor
authorized a trespass. Thus, we overrule the issues positing otherwise.
          Findings of Fact and Conclusions of Law
          The Land Owners next complain of the trial court’s failure to execute findings of fact
and conclusions of law. That matter is moot since they not only recognized that the
remedy is to abate and remand the appeal so the missing information can be filed, but also
affirmatively waived such relief. Thus, we do not address the issue and, instead, overrule
it. 
          Order in Excess of Statutory Authority
          Next, the Land Owners assert that the Commission’s order exceeds its statutory
authority. This is purportedly so because the order permitted a trespass and the
Commission issued it without proof that the well furthered the public interest. We overrule
the issue.
          Given our previous discussion about and resolution of the trespass debate, we see
no need to address the topic again. As for the other argument, in determining whether to
issue a permit for an injection well, the Commission is obligated to consider, among other
things, whether granting the application lies within the public’s interest. Tex. Water Code
Ann. §27.051(b)(1) (Vernon 2008). Here, the Commission found that the use of the well
for injection purposes was within the public’s interest because 1) there was a need for
additional disposal capacity in the Barnett Shale Field, 2) new wells in the field required
large fracture stimulations which used water, 3) the commercial disposal well would serve
to reduce costs associated with the disposal of fracture fluids and salt water, and 4) the
surface injection pressure is appropriate and will not fracture the formation. These findings
arose from evidence presented at the hearing. Also tendered at the hearing was evidence
suggesting that issuing a permit would not comport with public interest. For instance, the
data appearing of record indicates that a hill by the tract upon which the well is located
could cause dangerous traffic conditions to arise and that the presence of large trucks
traveling to the site could interfere with the use and enjoyment of neighboring lands. 
Admittedly, safety concerns are indicia that should be considered by the Commission when
assessing public interests. Texas Citizens for a Safe Future & Clean Water v. Railroad
Comm’n, 254 S.W.3d 492, 502 (Tex. App.–Austin 2007, pet. filed). Yet, the presence of
such evidence alone does not permit us to overturn the decision if the latter nonetheless
enjoys the support of substantial evidence. Again, under the pertinent standard of review,
we do not decide whether the ruling was correct but rather if it was reasonable given the
evidence and law. Nor are we entitled to re-weigh the evidence. So, because evidence
appears of record supporting the Commission’s ruling and that ruling comports with the
law, we cannot alter it.
 
 
          Accordingly, we overrule the issues before us and affirm the judgment. 
 
                                                                           Brian Quinn 
                                                                          Chief Justice
 
Campbell, J., concurs in result.