## AUTOMATIC GAS CO. v. DUDDING et ux.

### No. 6186.

Court of Civil Appeals of Texas. Texarkana.

Aug. 9, 1945.

Rehearing Denied Oct. 4, 1945.

Rollins, Clark & McWhirter, of Greenville, for appellant.

Mayo W. Neyland and J. Benton Morgan, both of Greenville, for appellees.

HALL, Chief Justice.

This cause was instituted by appellees, Mr. and Mrs. Dudding, against appellant for temporary injunction and upon final hearing for permanent injunction, to prevent appellant from constructing and maintaining its Butane Gas Reservoirs near their residence located about one mile East of the City of Greenville, Hunt County, Texas, on United States Highway Sixty-seven.

Appellees alleged that appellant was erecting its Butane tanks adjacent to their home which was located in Ardis Heights, a thickly settled suburb in the City of Greenville and near to an intersection of United States Highway Sixty-seven and a State Highway, both of which were much traveled thoroughfares.

Appellees alleged further, "that the building and operation of and maintaining this violent explosive in close proximity to the plaintiffs' residence and in such quantity is a constant menace to the safety and welfare of the occupants of plaintiffs' home. That it sets up a reasonable fear in the minds of the occupants that an explosion may occur and if the same does explode it would destroy all property and extinguish all human life within a radius of one thousand yards and that the storage and maintenance of such volume of highly and dangerous explosive adjacent to the residence occupied

by these plaintiffs and the residence occupied by each and all of those who are within a quarter of a mile of said tanks containing such a volume of highly explosive liquid constitutes a private and public nuisance. That the plaintiffs, by reason of a reasonable fear of the dire consequences that would happen should the explosion occur, are ever kept in a high and nervous strain, and which tends to and is a serious injury to the health of those occupying such residences. That the act of the building and constructing of such tanks as hereinbefore set out and maintaining such quantity of the highly explosive liquid has destroyed the value of plaintiffs' residence to the extent of at least Two Thousand Dollars ($2,000.00)."

Appellant answered by motion to dismiss because appellees had an adequate remedy at law and to the merits by alleging that the business of storing and dispensing Butane Gas has been made a lawful business by the Legislature and "was not a nuisance per se," and can only become a nuisance by reason of the manner in which the business is conducted; that it had complied with the Statutes and the Rules of the Railroad Commission made in conformity therewith regulating said business; and that if permitted to install its Butane tanks it will comply with all legal requirements.

Upon a hearing the trial court granted a temporary injunction against appellant, restraining it from installing its Butane Gas tanks; finding:

"From the facts as presented to the court, it is the opinion of the court and the court so finds that the storage of such large quantity of Butane Gas at the place and under such circumstances is a continuing menace to the life and property of the plaintiffs, and to the residences and homes immediately surrounding said location, and that it is a continuing menace to the public traveling over the highways adjacent thereto, and that the location and amount of explosive, to be stored, under the surrounding conditions and circumstances, creates both a private and public nuisance, and it is the opinion of the court that the temporary injunction applied for by the plaintiffs should be granted, and defendant restrained from completing the installation of said tanks and filling them with Butane Gas."

Appellant's Point Six is:

"The Railroad Commission having approved the tanks as being safe and having also approved all equipment and safety devices used in connection therewith as being safe, and the Railroad Commission having likewise approved the location of the storage tanks as being a safe location the trial court erred in granting a temporary injunction prohibiting the doing of the very thing that the State has by statute and laws authorized appellant to do by the issuance to it of a license and requiring of it a bond for the protection of the public."

Appellees admit that appellant is conducting a lawful business made so by the Legislature, and "that appellant has complied with the State Statutes as to the physical equipment and construction thereof, and that statutory inspections will be made;" but contends that the tanks are improperly located and "as situated, is a hazard to those living in said section, and especially appellees, and that same is a nuisance per se." This is the controlling question on this appeal.

Appellant is engaged in the wholesale business of storing and distributing Butane Gas in Hunt and adjoining counties, and proposes to erect two large tanks in which to store its Butane Gas in liquid state. One of these tanks has already been installed and the foundation has been prepared for the other. Their total capacity is about 18,400 "water gallons." The tanks are to be placed above the ground, on concrete foundations and the proposed location is 128 feet from appellees' residence. The facts show that Butane Gas is pumped from truck tanks under pressure into the stationary tanks; that when Butane is released from pressure it will form a gas, which, being heavier than air, will cling to the low places on the ground and spread; and that when ignited will flash to the source and cause an explosion. The facts are further, that two or three gasoline stations are located in this little community, one of which is much closer to appellees' home than the proposed Butane location. Butane is a recognized commercial product used largely in rural communities for heating and cooking; it is also used as fuel for gins and drilling operations. Appellees are users of Butane Gas. Their domestic tank of 150 gallons' capacity is located within fifteen or twenty feet of their residence but it is buried underground.

As stated above, the only contest here is with respect to the location of appellant's storage tanks. R.S. Articles 6053, 6053a,

782

Vernon's Tex.Civ.St.1939 Supp. Arts. 6053, 6053a, regulate the storage and distribution of Butane Gas. R.S. Article 6053a, Sec. 2, gives to the Railroad Commission "authority to prescribe such rules and regulations as in its wisdom may be deemed necessary to carry out the purposes of this Act"; and Section 2a of said Act provides:

"After the effective date of this Act all containers and pertinent equipment installed for use in this State for the storage and dispensing of liquefied petroleum gases for the purpose of providing gas for industrial, commercial, and domestic uses, shall be designed, constructed, equipped, and installed as specified under the published regulations of the National Board of Fire Underwriters for the design, installation, and construction of containers and pertinent equipment for the storage and handling of liquefied petroleum gases as recommended by the National Fire Protection Association, effective July, 1937, a copy of said regulations known as National Board of Fire Underwriters Pamphlet No. 58 being on file with the Gas Utilities Division of the Railroad Commission of Texas."

Section B–5 of National Board of Fire Underwriters Pamphlet No. 58 provides that:

"Above ground containers of Butane Gas having water capacity of over 1200 gallons shall be constructed a minimum distance of 50 feet from the nearest building or group of buildings; and providing further that above ground containers exceeding 1200 gallons' capacity may be installed close to buildings or property lines when specifically approved by the Inspection Department having jurisdiction."

Section b 5 of the Regulations of the Railroad Commission issued September 1, 1943, follows and complies with Pamphlet No. 58, cited above.

On May 19, 1945, after this suit was filed but before hearing was had on the application for temporary injunction, the Director of the Gas Utilities Division of the Railroad Commission of Texas approved the proposed location of appellant's tanks. Their location is 127 feet from the nearest residence and 128 feet from appellees' home. The Supreme Court has held in Housing Authority v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 87, 130 A.L.R. 1053, that:

"It is not an invalid delegation of legislative authority to grant an administrative body the right to make rules to put into effect completed laws," citing authorities.

■■■ The rules and orders of the Railroad Commission regulating the storage and distribution of liquid Butane Gas are in conformity to the statutes, are legal and have the force of law, Bent v. Jonet, 213 Wis. 635, 252 N.W. 290, 126 A.L.R. 1245. One engaging in such business in compliance with said rules is protected in the use of his property and it cannot be declared a nuisance by a court. From this record there can be no serious contention that appellant has failed to comply with the rules of the Railroad Commission with respect to the location of its tanks, nor can there be any contention that the Railroad Commission was not acting under express statutory authority when it approved the proposed location of appellant's tanks. Under such circumstances we must conclude that the trial court was without authority to declare the erection of appellant's tanks on the proposed location a nuisance per se; this for the reason that the Railroad Commission, clothed with full authority by the Legislature, has approved the proposed location.

For the reason indicated above, the judgment of the trial court is reversed and judgment here rendered for appellant.