**AMARILLO OIL COMPANY, Appellant,**

**v.**

**ENERGY–AGRI PRODUCTS, INC., Appellee.**

No. 07–83–0058–CV.

Court of Appeals of Texas, Amarillo.

May 13, 1987.

Rehearing Denied June 10, 1987.

Frank Douglass, Tom W. Reavley and Steve Selby, Scott, Douglass & Luton, Austin, Tex., James C. Sanders, Stokes & Fields, Amarillo, for appellant.

Broadus Spivey and Paul Knisely, Spivey, Grigg, Kelly & Knisely, Ivan D. Hafley, Reynolds, Allen & Cook, Austin, William J. Lowe and Jerry D. Courtney, Lowe & Courtney, Clarendon, for appellee.

Before REYNOLDS, C.J., and DODSON and KEITH *, JJ.

PER CURIAM.

Plaintiff below appeals from a take-nothing judgment, based upon a jury verdict, in its suit to quiet title to the natural gas in the Brown Dolomite formation underlying a lease it owned in Carson County, from which it and its predecessor had been producing gas for more than thirty years. We will dismiss the case for the reasons now to be stated.

### Overview of the Litigation

In 1952, Myrla Hodges executed an oil and gas lease to H.B. Howze; defendant acquired the right to produce the oil and casinghead gasoline from the tract by a "farmout" from Kimberlin, associated with Howze in the original lease. Empire Southern Producing Company, having acquired the right to produce natural gas under the Hodges tract, drilled a single well thereon and produced natural gas until the well and the rights to the gas were acquired by Amarillo Oil in 1958. This well, the Hodges No. 1, had produced gas for more than thirty years from the Brown Dolomite formation; and, according to our record, had produced approximately 1.7 billion cubic feet of gas, but had never produced any oil. Defendant, Energy-Agri Products, Inc., drilled two wells near the Hodges No. 1, through the Brown Dolomite formation and perforated one of the wells at 10–foot intervals therein so as to produce gas from the same formation as produced plaintiff's gas. The second well had not been perforated at the time of trial, but it was undisputed that defendant intended to perforate it if not prevented by court order.

Gas from the Kimberlin well was passed through a chilling device which reduced the temperature to approximately minus 25 dêgrees below zero. Through this mechanism, the gas was converted into a liquid which was, as described by the witnesses, a white, watery liquid which had many of the chemical characteristics of crude petroleum. According to one witness, it smelled like rubbing alcohol, and when poured upon the ground, evaporated very rapidly and dissipated into the atmosphere. For a discussion of the phenomena see *Clymore Production Co. v. Thompson*, 13 F.Supp. 469, 471 (W.D. Tex.1936), and the Note by Ralph A. Midkiff, entitled *Phase Severance of Gas Rights from Oil Rights*, in 63 Texas Law Review 133 (1984), where the subject is treated in detail.

The trial court granted a temporary injunction to plaintiff but, in an unpublished opinion, we reversed the judgment and dissolved the injunction for want of a complete record. During the time the restraining order was in effect, plaintiff procured a court order permitting a test of the two Kimberlin wells to determine if they should be classified as oil or gas wells. Upon the basis of these tests, conducted in accordance with Railroad Commission Rules, and in the presence of its representatives, the Commission duly classified these two Kimberlin wells as "oil wells," as defined in its rules and regulations. See Texas Natural Resources Code Annotated, section 86.-002(5) and (6) (Vernon 1978), for the statutory definitions of "gas well" and "oil well."

At the conclusion of the evidence, the trial court overruled motions by both parties for a peremptory instruction and sub-

---

* Justice, Court of Appeals, Ninth District (Retired), sitting by designation. Tex.Gov't Code Ann. § 73.012 (Vernon Pamp.1987).

mitted the case to the jury upon six special issues, which we summarize:

No. 1: The producing horizon of the Kimberlin No. 2 in the Brown Dolomite formation is not a horizon productive of natural gas only.

No. 2: If Kimberlin No. 3 were perforated as was done with Kimberlin No. 2, it can produce crude petroleum oil from the Brown Dolomite formation.

No. 3: If the Kimberlin No. 3 well were to be perforated as was done with Kimberlin No. 2, it would produce 6 barrels of crude petroleum per day.

No. 4: The jury found that the Brown Dolomite formation, as found in Kimberlin No. 2, is not a horizon productive of natural gas only.[1]

No. 5: The jury found that the Kimberlin No. 2 well could produce crude petroleum oil from the Brown Dolomite formation.[2]

No. 6: The jury found that the average daily production of crude petroleum oil from the Brown Dolomite formation from Kimberlin No. 2 was 6 barrels.

The trial court overruled plaintiff's Rule 301, Texas Rules of Civil Procedure, motions seeking a judgment in its favor notwithstanding the verdict and disregarding the unfavorable jury findings, and judgment was rendered for defendant.

### *Merits of the Appeal*

The appeal, basically, is predicated upon evidentiary points of error. There are "no evidence," "insufficient evidence," and "great weight and preponderance of the evidence" points leveled against the several findings.

Pursuant to the rule adopted by our Supreme Court in *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981), we will first dispose of the "no evidence" points. In passing upon the legal and factual insufficiency points, we will follow the familiar path laid down in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and its progeny. From our review of the record, there was "some" evidence supporting the jury findings; consequently, the "no evidence" points are overruled.

It will be noted from our account, that plaintiff failed to secure jury findings supporting its contentions. In our review of the attack upon these "non-findings," we will follow our recent decision in *Texas Employers Ins. Ass'n v. Choate*, 644 S.W.2d 112, 113 n. * (Tex.App.—Amarillo 1982, no writ). Having considered all of the evidence in the record on the questions submitted, as required by the authorities, we do not find merit to the contentions now advanced and all such points are overruled. Thus, we dispose of the first seven points of error.

Plaintiff's eighth point is its contention that the trial court erred in failing to grant its amended motion for new trial on the point that defendant's attorney violated the court's order granting plaintiff's motion in limine. In this regard, plaintiff submits that defendant's attorney and witnesses set out on a course which conflicted with the court's sustention of the motion in limine. On the record, we cannot fault the trial court.

Initially, it is to be observed that the purpose of a motion in limine is to prevent the introduction of prejudicial matter before the jury, but a motion in limine is not the predicate for complaint on appeal; the predicate is a proper, timely objection when the matter to be excluded is offered. *Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366, 367–68 (1962). Thus, to preserve error to matter injected in contravention of a sustained motion in limine, a timely objection is necessary. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex.1986).

---

**1.** The instruction accompanying this issue read: "Natural Gas" means those hydrocarbons which are found in a gaseous phase in the reservoir.

**2.** "Crude Petroleum Oil" was defined as: "any liquid hydrocarbon mixture or portion thereof, regardless of gravities which is in a liquid phase, and obtained at the surface as such and which is not the result of condensation of gas before or after it leaves the reservoir."

In the development of its point, plaintiff lists five items of testimony and a portion of defendant's attorney's argument which are alleged to violate the court's motion-in-limine rulings, and which, so plaintiff argues, was error that could not have been cured by objection or instruction. Other than its allegation that the introduction of the matters violated the court's rulings, plaintiff does not suggest any further basis for the exclusion of the testimony and the argument.

◼ Our review of the record reveals that a specific objection was not lodged to the first and fifth items of testimony; the only objection to the second item of testimony was that it violated the court's ruling; the third item of testimony was given without objection in response to a question asked by plaintiff's counsel; the fourth item of testimony was allowed after a bench conference upon plaintiff's objection that the testimony violated the court's ruling; and plaintiff voiced no objection to the attorney's argument. It follows that absent a proper, timely objection to any of the testimony and argument now said to be error, the error, if any, was not preserved, *Pool v. Ford Motor Co.,* *supra,* and the court did not err in failing to grant plaintiff a new trial on the ground urged. The eighth point is overruled.

In the final point, number nine, appellant contends that it was error for the trial court to deny it the right to tender jurors as witnesses on its motion for new trial in which it averred jury misconduct. There were no affidavits attached to the motion for new trial. Appellant's counsel testified at the time of presenting the motion that he had discussed the case with various jurors, but he could not secure an affidavit from any of them. The alleged misconduct centered around a juror's suggestion, during their deliberations, that the rules of the Railroad Commission permitted the adding of the white liquid produced by the freezing mechanism to the gasoline produced and classified it as "oil." He then urged the other jurors to accept the Railroad Commission theory of what was "oil" and what was "gas," thereby getting some of the reluctant jurors to come around to his position by answering the questions so as to favor defendant. One juror, testifying upon a bill of exception, said that the discussion took place while the jury stood nine to three; but, after the discussion, the verdict was ten to two, as finally returned into and accepted by the court.

◼ Assuming, without deciding that plaintiff excused its failure to attach affidavits of misconduct to its motion for new trial, we do not find an abuse of discretion in refusing to hear the tendered testimony; consequently, we overrule the ninth point. *Cf. Cortez v. Medical Protective Co. of Ft. Wayne,* 560 S.W.2d 132, 136 (Tex.Civ.App. —Corpus Christi 1977, writ ref'd n.r.e.); and *Allan v. Materials Transportation Company,* 372 S.W.2d 744, 747 (Tex.Civ. App.—Corpus Christi 1963, no writ).

The discussion of the alleged jury misconduct leads us into the several cross-points urged by defendant, by which it contends that appellant's suit was a collateral attack upon a valid order of the Railroad Commission classifying its wells as "oil" wells under the statutes and rules governing such classifications.

At the outset of our discussion, we confront plaintiff's contention that it simply seeks to quiet title to its gas which it claims to own under the leased tract. We recognize the rule of long standing that the Railroad Commission is not empowered to effect a change or transfer of property rights. *See Nale v. Carroll,* 155 Tex. 555, 289 S.W.2d 743, 745 (1956), and its progeny. *See also, Railroad Commission of Texas v. City of Austin,* 524 S.W.2d 262, 268 (Tex.1975), where the Court wrote:

> [The Railroad Commission] does not have authority to determine the ownership of oil or gas, or how the proceeds from the sale of oil or gas should be apportioned among people who contend that it was, or is, actually being produced from beneath their land.

Defendant contends that the policies, rules, regulations, and well classifications of the Railroad Commission are incorporated into terms of conveyances of the alleged owners of such oil and gas, citing *Stanolind*

*Oil & Gas Co. v. Terrell*, 183 S.W.2d 743 (Tex.Civ.App.—Galveston 1944, writ ref'd), and *Automatic Gas Co. v. Dudding*, 189 S.W.2d 780 (Tex.Civ.App.—Texarkana 1945), *aff'd*, 145 Tex. 1, 193 S.W.2d 517 (1946). *See also, Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1945).

■ The Railroad Commission had primary jurisdiction to determine the classification of all of the wells involved in this litigation. It, and not the courts, is vested with the power and charged with the duty of administering the statutes governing the production of oil and gas in this State, including the protection of correlative rights. *Texaco, Inc. v. Railroad Commission*, 583 S.W.2d 307, 310 (Tex.1979); *Railroad Commission v. Shell Oil Company*, 380 S.W.2d 556, 559 (Tex.1964).

■ Our record discloses conclusively that the Commission had classified both Kimberlin wells as "oil" wells and that, as required by section 85.241 of the Texas Natural Resources Code Annotated (Vernon 1978) to test the validity of the classifications, no direct attack had been made against such determination by a suit filed in Travis County attacking such determinations. The Commission acts in a quasi-judicial capacity, and its order, regular on its face, will be enforced by the courts unless set aside in a direct proceeding brought for such purpose. The order is presumptively valid, and is not subject to collateral attack. *Corzelius v. Harrell*, 143 Tex. 509, 186 S.W.2d 961, 967 (1945).

■ The Railroad Commission had already determined that the two Kimberlin wells were "oil" wells under the statutes and regulations governing production from such wells. Under the law of capture which has so long governed ownership rights of oil and gas production in this state, the District Court of Carson County did not have jurisdiction in this case to entertain the collateral attack upon such determination. The courts of Travis County had exclusive jurisdiction, under the statute, to entertain a direct attack on such orders. *Bolton v. Coats*, 533 S.W.2d 914, 915–16 (Tex.1975); *Looney v. Sun Oil Co.*,

170 S.W.2d 297, 299 (Tex.Civ.App.—Texarkana 1943, writ ref'd w.o.m.).

■ Returning momentarily to the jury misconduct point, the panel discussion, if in truth it did occur, was a simple recognition by lay jurors of the legal effect of the classification of the Kimberlin wells by the Commission. The issues submitted were consequently immaterial to the judgment which was and is compelled by the nature of the suit and the jurisdiction of the trial court over the subject matter of the case. We sustain defendant's first cross-point of error, which reads:

> The trial court erred in overruling Defendant's motion for instructed verdict and motion to dismiss, and in submitting Plaintiff's special issues to the jury, because (a) Plaintiff's alleged "title" claim constitutes an attempt to reclassify Defendant's oil wells as gas wells and to reclassify Defendant's casinghead gas as gas well gas, which are matters [within] the exclusive, primary jurisdiction of the Railroad Commission and over which the district court of Carson County lacks jurisdiction; and (b) Plaintiff's alleged title claims constitute a collateral attack upon the Railroad Commission orders certifying and classifying Defendant's Kimberlin No. 2 and Kimberlin No. 3 wells as oil wells.

We invoked the doctrine of primary jurisdiction in a case involving an administrative agency in *Lloyd A. Fry Roofing Company v. State*, 516 S.W.2d 430, 432–33 (Tex.Civ. App.—Amarillo 1974, writ ref'd n.r.e.), and ordered the dismissal of the State's suit for lack of jurisdiction. We follow *Fry, supra*, and order the dismissal of plaintiff's case at its cost.

It is so ordered.

DODSON, J., dissents.

DODSON, Justice, dissenting.

I respectfully dissent from the majority's disposition of this case. Amarillo Oil Company is the appellant and Energy-Agri Products, Inc. is appellee. The majority sustained the appellee's first crosspoint, invoked the doctrine of primary jurisdiction

(*i.e.*, in a case involving an administrative agency), and dismissed the appellant's cause of action for lack of subject matter jurisdiction. I disagree.

By its first four crosspoints of error, the appellee, in essence, maintains that the appellant's cause of action constitutes an impermissible collateral attack on the Texas Railroad Commission's classification of appellee's wells as oil wells, and the Commission's designation of the Panhandle Field as a common reservoir. However, as I read the appellant's pleading and the record before us, the appellant does not attempt either directly or indirectly to challenge the Commission's classification of appellee's wells. Nor does the appellant seek to challenge the Commission's designation of the Panhandle Field as a common reservoir.

By its pleadings, the appellant alleges that the appellee is producing and converting appellant's gas and the appellant seeks to enjoin the appellee from that conduct. Thus, in essence the appellant claims that the substance being produced by appellee is appellant's gas rather than appellee's oil and casinghead gas, that by producing the substance in question the appellee is converting appellant's gas, and that the appellee should be enjoined from producing and converting appellant's gas.

It is undisputed that the appellant owns the gas under the property in question; and, that the appellee owns the oil and casinghead gas under the same property. Likewise, it is undisputed that the appellant has been producing gas from the property for over thirty years, and, that the appellee is producing and intends to further produce a substance the appellee claims to be oil or casinghead gas. Consequently, the real and primary matter in dispute between the parties is the ownership of the substance being produced by the appellee (*i.e.*, is the substance the appellee's oil or casinghead gas, or is the substance appellant's gas?).

It is well settled and the majority acknowledges that the Railroad Commission does not have authority to determine the ownership of oil or gas. *Railroad Com-mission of Texas v. City of Austin*, 524 S.W.2d 262, 267–68 (Tex.1975). To the same legal effect are: *Jones v. Killingsworth*, 403 S.W.2d 325, 328 (Tex.1965); *Nale v. Carroll*, 155 Tex. 555, 289 S.W.2d 743, 745 (1956); *Ryan Consolidated Petroleum Co. v. Pickens*, 155 Tex. 221, 285 S.W.2d 201, 207 (1955); and *Magnolia Petroleum Co. v. Railroad Commission*, 141 Tex. 96, 170 S.W.2d 189 (1943). As the Court stated in *Austin:*

This Court has also held on several occasions that the Commission does not have power to determine title to land or property rights. *It is invested with broad powers to determine where, or whether, wells may be drilled, and how much oil or gas may be produced. But it does not have authority to determine the ownership of oil or gas,* or how the proceeds from the sale of oil or gas should be apportioned among people who contend that it was, or is, actually being produced from beneath their land. [emphasis added]

Since, in this instance, the controversy is who owns the substance being produced by the appellee, and whether the appellee should be enjoined from producing that substance, the appellant's cause of action is exclusively within the jurisdiction of the trial court, rather than the Railroad Commission.

Nevertheless, the majority holds that the appellant's cause of action is a collateral attack on the Commission's classifications of appellee's wells and reservoir designations. However, those determinations by the Railroad Commission cannot serve to transfer ownership of the appellant's gas to the appellee. Nor can those determinations transfer the ownership of appellee's oil and casinghead gas. In sum, the Commission's well and reservoir designations do not and cannot resolve the questions as to who owns the substance being produced from appellee's wells. The fact that the substance is being produced from appellee's wells, which are classified as oil wells, does not make the substance oil or casinghead gas. The ownership of the substance

simply is not a matter within the Railroad Commission's jurisdiction.

The majority relies on several cases to support its position that the appellant's cause of action is a collateral attack on the Commission's well classification and reservoir designation and should be dismissed for lack of jurisdiction. I deem unnecessary a case-by-case analysis of the majority's authority to demonstrate that those cases are not applicable in the case before us. It is sufficient to state that in my view those cases are neither persuasive nor controlling in this instance. Consequently, I would overrule the appellee's first four crosspoints. In that regard, I wish to state that I have considered the appellant's nine points of error and conclude that those points of error do not present cause for disturbing the trial court's judgment.

In sum, I would overrule the appellee's first four crosspoints, overrule the appellant's nine points of error, and affirm the trial court's judgment. Since the majority's opinion requires a different disposition of this case, I respectfully dissent.

## ON MOTION FOR REHEARING

REYNOLDS, Chief Justice.

Amarillo Oil Company has filed a motion for rehearing seeking a reversal of the judgments of this Court and the trial court, and the rendition of judgment in its favor, on the same contentions resolved against it on original submission, but with the addition of one new matter. Further comment on the contentions would not be beneficial, but the new matter requires an address.

In its rehearing motion, Amarillo Oil accurately points out that at the beginning of the fourth paragraph in the majority opinion, it is incorrectly stated that "[t]he trial court granted a temporary injunction to plaintiff but, in an unpublished opinion, we reversed the judgment and dissolved the injunction for want of a complete record." In the interest of accuracy, it is noted, and now there is made the correction, that as explained in the unpublished opinion, the trial court's order granting a temporary injunction to Amarillo Oil was affirmed on

the theory that no abuse of discretion on the part of the trial court was found. *Energy-Agri Products, Inc. v. Amarillo Oil Company*, No. 07–82–0253–CV (Tex.App.—Amarillo, Dec. 7, 1982, no writ).

The affirmance of the temporary injunction order, Amarillo Oil argues, in effect disposed of the jurisdictional issue by allowing the trial court to proceed with the case. This obtains, the argument continues, because Energy-Agri submitted on the appeal that "as a matter of law, any gas produced from the (Kimberlin) wells is casinghead gas ... because the Railroad Commission of Texas has classified [Energy-Agri]'s wells as 'oil wells'." Consequently, the argument concludes, this Court's ruling became the law of the case, binding this Court to the ruling that the trial court had jurisdiction to hear the case. The argument is not well premised.

In the appeal from the order granting the temporary injunction, the focus was only on the question whether the trial court abused its discretion in granting the temporary injunction. As was stated in the opinion, "in order to find an abuse of discretion by the trial court, this court would have to accept as established matters which can only be decided upon the trial upon the merits." More particularly, the opinion explained that "[t]he question of the construction, validity and effect of Railroad Commission rules is a complex one and should be decided only after a full development of all evidence bearing on the question and consideration of ancillary legal considerations, which was not done at the hearing on application for temporary injunction."

Obviously, then, the legal question of jurisdiction was not determined on the prior appeal. The doctrine of the law of the case does not apply to a question of law that was not decided on a prior appeal, *Denny v. White House Lumber Co.*, 150 S.W.2d 296, 300–01 (Tex.Civ.App.—Amarillo 1941, writ dism'd judgmt cor.), albeit the question might have been decided. *United States v. McClain*, 593 F.2d 658, 664 (5th Cir.), *cert denied*, 444 U.S. 918, 100 S.Ct.

234, 62 L.Ed.2d 173 (1979). Accordingly, Amarillo Oil's new contention is overruled.

The motion for rehearing is overruled.

DODSON, J., dissents to the overruling of the motion for rehearing only to the extent that he would grant the motion on the issue of the dismissal of the case for want of jurisdiction.

KEITH, J., not participating.